LINDA REIVITZ, Secretary Department of Health and Social Services
You have asked for my opinion concerning several questions involving the authority of the Department of Health and Social Services (DHSS) to establish radiation standards. Specifically, you ask whether DHSS may establish radiation standards for air emission and water discharges from sources licensed by the United States Nuclear Regulatory Commission (NRC) as well as other sources of radiation. These standards would be encompassed within chapter HSS 157 Wis. Adm. Code and would limit emissions and discharges in order to protect the public from unnecessary exposure to radiation.
It is my opinion that DHSS may not establish radiation water effluent standards applicable to NRC licensees; DHSS could regulate radioactive air emissions if the United States Environmental Protection Agency (EPA) delegated such authority under the Clean Air Act but EPA has not done so to date. DHSS may regulate radioactive air emissions and water effluent for any other non-NRC licensee. *Page 186 
The questions which you have raised require an analysis of existing state law with respect to the authority of DHSS and whether the federal government has preempted Wisconsin from setting radiation standards to any degree.
Beginning with what legal authority DHSS has as a matter of state law, chapter 140, Stats., is controlling. DHSS is granted very broad authority to protect the health and life of citizens in Wisconsin. Section 140.05(1) reads: "The department shall have general supervision throughout the state of the health and life of citizens." One of the specific areas delegated to DHSS by the Legislature is in the area of radiation protection. Sections 140.50 to 140.60 are known as the Radiation Protection Act and specify certain responsibilities that DHSS has in order to protect both the "health and life" of Wisconsin citizens and the "environment of the state" from the hazards of radiation emissions. Beginning with the stated public policy and purpose, it is clear that DHSS has very broad authority to set radiation standards.
 140.51 Public Policy. Since ionizing radiations and their sources can be instrumental in the improvement of the health and welfare of the public if properly utilized, and may be destructive or detrimental to life or health if carelessly or excessively employed or may detrimentally affect the environment of the state if improperly utilized, it is hereby declared to be the public policy of this state to encourage the constructive uses of radiation and to prohibit and prevent exposure to ionizing radiation in amounts which are or may be detrimental to health. It is further the policy to advise, consult and cooperate with the department of industry, labor and human relations and other agencies of the state, the federal government, other states and interstate agencies and with affected groups, political subdivisions and industries; and, in general, to conform as nearly as possible to nationally accepted standards in the promulgation and enforcement of rules.
Your department's specific powers and duties are found at section 140.53. DHSS' duties are shared with the Department of Industry, Labor and Human Relations (DILHR) and include the following: Adoption and enforcement of rules that "may be necessary to prohibit and prevent unnecessary radiation"; and the development of "comprehensive policies and programs for the evaluation and determination of hazards associated with the use of radiation, and for *Page 187 
their amelioration." The only limitation on these broad powers under state law is that the Radiation Protection Act does "not apply to on site activities of any nuclear reactor plant licensed or operated by the nuclear regulatory commission." Sec. 140.595(2), Stats.
Given the stated public policy and purpose in section 140.51, the specific powers and duties outlined in section 140.53 and the mandatory language for promulgation of a radiation protection code in sections 140.53 and 140.56, there is little doubt that DHSS has the authority under state law to set radiation standards to protect the health and life of Wisconsin citizens for sources other than nuclear power plants operated or licensed by NRC.
That is not to say that other state agencies have no similar or corresponding responsibilities. For example, the Department of Natural Resources (DNR) also has broad authority to establish certain radioactive standards to prevent environmental harm. See
chapter 147 wherein a radioactive substance is defined to be a "pollutant" within the meaning of Wisconsin's pollution discharge elimination system. See sec. 147.015(7), Stats. See also section 144.025(3), which requires DNR to establish a program that will protect Wisconsin's water resources. However, the fact that another agency has similar or overlapping legal authority, as may be the case here, does nothing to diminish the fact that DHSS has the responsibility and authority under state law to create air emission and water discharge radiation standards to protect human health. Had the Legislature wished to give either DHSS or DNR sole authority over air or water regulation, it could have easily stated so. The Legislature was well aware of the fact that DHSS exercises authority under the Radiation Protection Act because the Act existed at the time section 144.025 was created.*
The remaining question is whether the federal government has taken any action to preempt the DHSS from setting radiation standards to any degree? This requires an analysis of the relationship between Wisconsin and the federal government under the Atomic Energy Act, the Clean Water Act and the Clean Air Act. *Page 188 
The Atomic Energy Act of 1954 (AEA) was enacted by Congress for the purpose of development of nuclear energy consistent with national defense and protection of public health and safety (see42 U.S.C. §§ 2011, 2012 and 2013). In order to effectuate this purpose, Congress established a licensing program wherein the construction and operation of both "production" and "utilization" facilities, which use "source," "by-product" or "special nuclear" materials, would be subject to standards established by the NRC (42 U.S.C. §§ 2131, et seq.). These facilities range in diversity from hospitals and research institutions using radioisotopes to nuclear reactors. Pursuant to its regulatory responsibilities, the NRC has adopted extensive standards for protection against radiation exposure. See, e.g., 10 C.F.R. Parts 20 and 50 — App. I. The AEA expressly retains for states the power to regulate the "generation, sale or transmission of electric power" produced by nuclear power plants (42 U.S.C. §§ 2018
and 2021(k)), but only for "purposes other than protection against radiation hazards" (42 U.S.C. § 2021(k)).
The question of whether the AEA has preempted state involvement in the regulation of facilities regulated by the AEA for health and safety purposes has been the subject of much litigation. The United States Supreme Court has recently considered this issue in the context of a state-imposed moratorium on the construction of new nuclear-electric generating facilities. In Pac. Gas Elec.v. St. Energy Resources Conserv., 103 S. Ct. 1713 (1983), the Court specifically held that states are federally preempted from independently imposing any regulations relating to safety or radiation hazards for nuclear power plants. Id. at 1723, 1726.
Notwithstanding this broad preemption, the state has two potential mechanisms by which it can establish such regulations. First, the AEA authorizes the NRC to enter into agreements with any state to assume the NRC's program for source, by-product or special nuclear materials. If a state and the NRC enter into such an agreement, the state then assumes the "authority to regulate the materials covered by the agreement for the protection of public health and safety from radiation hazards." Id. 42 U.S.C. § 2021(b). Since Wisconsin has not chosen to become an "agreement state," this avenue is presently unavailable.
A state may impose regulations on NRC licensees, however, if such authority can be found in another federal statute. Air emissions *Page 189 
and effluent discharges are each regulated by separate federal regulations: the Clean Air Act —42 U.S.C. §§ 7401, et seq., and the Clean Water Act —33 U.S.C. §§ 1251, et seq.
Under the Clean Water Act, "pollutant" is defined to include radioactive material. However, the United States Supreme Court has specifically held that the Clean Water Act does not authorize the regulation of discharges from NRC licensees for source, by-product, and special nuclear materials. Train v. Colo.Public Interest Research Group, 426 U.S. 1 (1976). Therefore, a state may not adopt regulations governing water discharges from NRC licensed facilities. Still, as discussed above, states may adopt such regulations for non-NRC licensed facilities.
In the area of air emissions from NRC licensed facilities, there is a statute authorizing state action under certain circumstances. The Clean Air Act Amendment of 1977 (42 U.S.C. § 7422(a)) specifically authorizes the EPA to regulate radioactive air pollutants, including source, by-product and special nuclear material, in order to protect "public health." The EPA and NRC must coordinate the regulation of source, by-product or special nuclear material from any facility under NRC jurisdiction (42 U.S.C. § 7422(c)(2)). However, NRC may waive any EPA standard at any facility under jurisdiction of NRC, if the standard would "endanger public health and safety" (42 U.S.C. § 7422(c)(3)).
The EPA may delegate to any state its regulatory powers if certain conditions are met. 42 U.S.C. § 7410. Although there is nothing in federal air law that requires responsibility of regulating air pollutants from NRC-licensed facilities to be in DNR and not DHSS, EPA has delegated the authority to regulate air pollutants to DNR through the regulatory scheme set out in chapter 144. Therefore, DNR may regulate radioactive air pollutants through its air pollution program in chapter 144.
In summary: for NRC-licensed facilities, DHSS may not regulate water effluents for radioactive pollutants; it could regulate air emissions if it were delegated authority by the EPA under the Clean Air Act, but to date delegation has not occurred. However, for any other air or water radioactive pollution source, DHSS has the *Page 190 
authority and responsibility to establish standards to protect the public health and lives of Wisconsin citizens.
BCL:KMF
* Section 140.50, et seq., was created by chapter 325, Laws of 1963, whereas section 144.025 was created by chapter 614, Laws of 1965.